Ben Harris and Rhea Harris v. Commissioner.
Harris v. Commissioner
Docket No. 5953.
United States Tax Court
1945 Tax Ct. Memo LEXIS 105; 4 T.C.M. (CCH) 818; T.C.M. (RIA) 45265; July 31, 1945
Meyer A. Cook, Esq., for the petitioners. William F. Robinson, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1941 in the amount of $1,451.61. The petition alleges that the respondent erred in (1) adding to the net income reported by the petitioners $6,723.96 as income from business, and (2) in disallowing the deduction from gross income of $1,520 representing entertainment expenses and expenses connected with the use of an automobile used in the business. [The Facts] Petitioners are husband and wife and residents of Youngstown, Ohio. They filed a joint income tax return for the calendar year 1941 with the collector *106 of internal revenue for the eighteenth district of Ohio, at Cleveland. Rhea Harris is a petitioner only because a joint income tax return was filed. Ben Harris will hereinafter be referred to as petitioner. Ben Harris owns and operates a restaurant and bar known as the "Ringside Cafe" in the City of Youngstown. All sales at the restaurant and bar are rung up on a cash register. The total sales for the year 1941, as shown by the petitioner's books of account, amounted to $56,488.14. Practically all of the work done at the Ringside Cafe is done by employees. The petitioner is crippled and does very little work at the cafe aside from supervision. In the latter part of 1940, or early in 1941, the petitioner was induced to take an agency for Steel City Novelty Co. for the purpose of inducing saloons in Youngstown and throughout Mahoning County to install punch boards. For this service he was to be given a commission of 25 percent of the amount received by his principal from the operation of the punch boards. There are about 150 saloons in Mahoning County and the petitioner was successful in getting the punch boards installed in many of them. His principal paid him in cash monthly *107 the amount of the commissions to which he was entitled. The operation of the punch boards in saloons was stopped by police authorities in August, 1941. The total amount of the commissions received by the petitioner from his principal during 1941 was $6,700.89. These commissions were paid to the petitioner in cash at the Ringside Cafe and the petitioner placed $6,423.89 of the money in his cash register, although the deposits were not rung up on the cash register. The petitioner has a bookkeeper who is employed part-time and who records the operations of the business, with withdrawals by the petitioner, and all expenditures. At the close of each year a public accountant is employed to make up the petitioner's income tax return from his books of account. When the auditor came to make up the petitioner's return for 1941 he discovered, as also the bookkeeper had noted, that there was an overage of cash in the amount of approximately $6,000. He was informed by the petitioner that this overage in cash was occasioned by the fact that he had commingled with his cash from the operation of the Ringside Cafe the commissions paid to him by the Steel City Novelty Co. The return filed shows the *108 receipt of this $6,700.89 separate from the operations of the cafe, which resulted in a loss for the calendar year of $690.57. A revenue agent examining petitioner's books of account for the purpose of verifying his income tax return for 1941 found an overage in the cash for that year in the amount of $6,528.08. He held, and the respondent held, that this overage in cash resulted from the operations of the Ringside Cafe. He also disallowed the deduction from gross income of $195.88 representing the payment of Ohio Unemployment Insurance, which was applicable to years prior to 1941. He therefore added this amount to the overage in cash of $6,528.08, making an increase in the income from business of $6,723.96. He refused to find that any part of this overage in cash represented a receipt of commissions from the Steel City Novelty Co. In the deficiency notice it is stated: "(b) Under Item 8 of your return for 1941 you reported a net business loss of $690.57 In Schedule H of your return, explanatory of the net loss of $690.57, total receipts are shown as $56,488.14 whereas your books and records show total receipts of $6,528.08 in excess of that amount. Gross and net income has been *109 increased by the amount of $6,528.08 under the provisions of Sections 22 (a) and 41 of the Internal Revenue Code. "Ohio unemployment insurance claimed of $195.88 which was applicable to years prior to 1941, is not a proper deduction from business income computed on the accrual basis for 1941 and is disallowed. Your income is accordingly increased in the total amount of $6,723.96." In his income tax return for 1941 the petitioner deducted from the $6,700.89 received by him from the Steel City Novelty Co. $1,520, which deduction was disallowed by the respondent in the determination of the deficiency. Of this amount $1,000 is an estimate made by the petitioner of the cost of drinks and food purchased by him when he called upon other saloons for the purpose of interesting them in the installation of punch boards; and $520 is the estimated cost to the petitioner of the use of his automobile in connection with his business. The petitioner admits that the last payment on his commissions from the Steel City Novelty Co. in the amount of $277 received on August 31, 1941, was not deposited in his cash register. He testified that the balance of his commissions in the *110 amount of $6,423.89 was deposited in the cash register. We so find. It therefore follows that the difference between this amount and the $6,723.96 represented taxable income of the petitioner. This difference is $300.07. Petitioner does not contest this addition to his net income from the operation of the Ringside Cafe. Petitioner admitted that the deduction of $1,000 for entertainment expenses was only an estimate on his part and that he had no record as to the actual amount spent. Also, that the deduction of $520 for automobile expense was a pure estimate; that his automobile was used both for business purposes and for pleasure and that $520 was taken as approximately 80 percent of the total expense of the automobile. We are unable to say, on the record here, that any part of the deductions so claimed represented ordinary and necessary expenses of the petitioner's business, and the respondent is accordingly sustained in his disallowance thereof. Decision will be entered under Rule 50.